# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0923** (Summers County CC-45-2018-F-5)

**Leland P.,**
**Defendant Below, Petitioner**

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Leland P., by counsel Scott A. Ash, appeals the Circuit Court of Summers County's October 10, 2018, order sentencing him to an effective 25-to-100-year term of incarceration for his conviction of multiple sex crimes.[1] The State of West Virginia, by counsel Jane Charnock, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in admitting his inculpatory statement to law enforcement and in admitting highly prejudicial hearsay evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, petitioner was indicted on two counts of first-degree sexual assault; three counts of second-degree sexual assault; five counts of sexual abuse by a parent, guardian, or custodian; and five counts of incest. The victim was petitioner's step-daughter.

Prior to petitioner's trial on these charges, the State filed a motion to determine the admissibility of petitioner's recorded inculpatory statement to law enforcement. The circuit court held an evidentiary hearing on the State's motion in June of 2018. During the hearing, the State

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

called West Virginia State Trooper Sergeant Wood ("Sgt. Wood"), who testified that petitioner willingly participated in an interview at his request. Sgt. Wood testified that, although petitioner was not under arrest at the time of the interview, he informed petitioner of his *Miranda*[2] rights, which petitioner waived. Sgt. Wood testified that, during the approximately one-hour-and-nine-minute interview, petitioner admitted that he had sexually assaulted the victim on five separate occasions. On cross-examination, Sgt. Wood testified that his interview technique was not based on any specific training he received as a State Trooper; rather, his technique was based on his eleven years of career experience. Sgt. Wood explained that his interviewing style involved establishing a rapport with the interviewee prior to initiating investigative questioning. Sgt. Wood further testified that he was aware of the specifics of the victim's allegations prior to the interview with petitioner and noted that petitioner's admissions were consistent with the allegations. Ultimately, the circuit court determined that petitioner's statement to Sgt. Wood was voluntarily given and was, therefore, admissible at trial.

During this recorded statement, which was published to the jury during petitioner's trial, Sgt. Wood told petitioner that he believes "there's two kinds of people" that he had interacted with during his career: criminals and good people that have made mistakes. Sgt. Wood stated that he believed petitioner was "a good person" and that petitioner would benefit from telling the truth because he "needed [Sgt. Wood] to go to the jury . . . and say . . . yes, mistakes were made, but [petitioner] is not a bad person and he doesn't want to be remembered for a few tiny little mistakes." Although petitioner initially denied the allegations against him, he confessed to a single incident of sexual assault twenty-two minutes into the interview. Petitioner provided details, such as the victim's activities prior to the assault, what she was wearing, and the duration of the assault, without leading questioning from Sgt. Wood. Upon further questioning, petitioner admitted to four other incidents of sexual abuse, the first of which occurred when the victim was eleven years old. The details provided by petitioner matched that of the victim's previous disclosure during a forensic interview.

In addition to Sgt. Wood's testimony and petitioner's recorded statement, the State presented the testimony of the victim, which corroborated the details of petitioner's confession. Petitioner testified and presented the testimony of four additional witnesses. One of these witnesses was the victim's younger brother, who testified that he saw petitioner "come out of [the victim's room] putting his shorts back on." The younger brother also testified that "[petitioner] and [the victim] would go back to [the victim's] room sometime[s] and [petitioner] would have me and [another sibling] stay in the living room." Based upon all of this evidence, the jury convicted petitioner on all counts.

Following his conviction, petitioner moved for a new trial, and the circuit court denied the motion. Ultimately, the circuit court sentenced petitioner to an effective 25-to-100-year term of incarceration. Additionally, the circuit court ordered that petitioner serve a fifty-year period of extended supervision following his incarceration. The circuit court's decision was memorialized by its October 10, 2018, sentencing order. Petitioner now appeals this order.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

On appeal, petitioner argues that the circuit court erred in admitting his inculpatory statement to Sgt. Wood because it was obtained through "the inducement of fear and fomenting of hope."[3] This Court has held as follows:

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 13, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011). Moreover,

> [b]y employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995). The crux of petitioner's argument is that "[w]hen the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary." Syl. Pt. 1, *State ex rel. Justice v. Allen*, 189 W. Va. 437, 432 S.E.2d 199 (1993) (quoting *State v. Parsons*, 108 W. Va. 705, 152 S.E.2d 745 (1930)). However, in *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994), this Court rejected the proposition that representations or promises necessarily invalidate a subsequent confession and overruled *Parsons* and, by extension, *Allen*— the cases on which petitioner now relies. As we have held, "[i]n determining the voluntariness of a confession, the trial court must assess the totality of all the surrounding circumstances. No one factor is determinative." *Id.* at 258, 452 S.E.2d at 61. "Whether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined

---

[3]Although petitioner asserts that the circuit court erred in "failing to suppress" his confession, the record reflects that petitioner did not move to suppress the statement in question and offered no argument against the admission of the statement. Nevertheless, this Court has held that "[i]t is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence." Syl. Pt. 2, *State v. Black,* 227 W. Va. 297, 708 S.E.2d 491 (2010) (internal citations omitted). Therefore, despite the apparent failure to preserve this issue below, we find it necessary to review the voluntariness of petitioner's confession.

from a review of the totality of the circumstances." Syl. Pt. 4, *State v. Jones,* 220 W. Va. 214, 640 S.E.2d 564 (2006) (citations omitted). Finally,

> [i]n examining the totality of the circumstances, a court must consider a myriad of factors, including the defendant's age, intelligence, background and experience with the criminal justice system, the purpose and flagrancy of any police misconduct, and the length of the interview. *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995).

*State v. Bradshaw*, 193 W. Va. 519, 527, 457 S.E.2d 456, 464 (1995).

When considering the totality of the circumstances in this case, we find that petitioner's confession was voluntarily given. While recognizing that petitioner was of limited intelligence[4] and had little experience with the criminal justice system, it is clear that Sgt. Wood's conduct and questioning were not unduly coercive. Sgt. Wood properly informed petitioner of his *Miranda* rights, clarified that petitioner could leave at any time, and told petitioner that he did not need to answer any questions. Subsequently, Sgt. Wood developed a rapport with petitioner and slowly introduced the fact that the victim had levied allegations against him. Sgt. Wood provided petitioner an opportunity to admit his mistakes so that he could be remembered "for all the good things" that he did. Sgt. Wood did not threaten or promise petitioner any particular outcome as a result of confessing. Further, the interview lasted only one hour and nine minutes, and petitioner began to admit to the crimes after only twenty-two minutes of questioning. Petitioner was not subjected to an extensive or long interrogation before confessing. Critically, as petitioner confessed to sexually abusing the victim, he provided details that matched the allegations of the victim, without knowledge of the details of her allegations or leading questions. Accordingly, we find no error in the circuit court's determination that petitioner's confession was voluntary based upon the totality of the circumstances during which it was given.

Petitioner also argues that the circuit court erred in admitting prejudicial hearsay testimony in two instances at his trial. However, it is clear that petitioner failed to object to the testimony on hearsay grounds in both instances.[5] We have previously held that "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 1, *State v. Sites*, 241 W. Va. 430, 825 S.E.2d 758 (2019) (internal citations omitted). "This principle is designed to prevent 'a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result).'" *Id*. at 438, 825 S.E.2d at 776 (quoting *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996)). Petitioner's failure to raise hearsay objections at trial precludes this Court from addressing this matter on appeal.

---

[4]Petitioner participated in a competency evaluation during these proceedings, and the evaluator determined that his "IQ" score was 68, which is below average intelligence. Nonetheless, the evaluator ultimately concluded that petitioner was competent to stand trial.

[5]In one instance, petitioner objected to the question that led to the hearsay testimony on the ground that it was "asked and answered." In the other instance that petitioner cites on appeal, he failed to object in any respect.

For the foregoing reasons, the circuit court's October 10, 2018, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**:  March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison